## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **ESTATE OF AUSTIN D. HERRICK,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **vs.** | Case No. 2:12CV671DAK |
| **UNITED STATES OF AMERICA,** | Judge Dale A. Kimball |
| **Defendants.** | |

This matter is before the court on Plaintiff Estate of Austin D. Herrick's Motion for Summary Judgment. On March 16, 2016, the court held a hearing on the motion. At the hearing, Plaintiff was represented by Paul W. Jones, and Defendant was represented by Rick Watson. The court took the motion under advisement. The court has considered carefully the memoranda submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

### BACKGROUND

Plaintiff seeks a tax refund from the Internal Revenue Service for the calendar years 2000 through 2006. Plaintiff is the Estate of Austin D. Herrick. Herrick, a U.S. citizen, lived and worked in the Philippines during the time frame relevant to the claims for a refund. Plaintiff contends that Herrick mistakenly believed that he would not owe any United States taxes on the

income he earned in the Philippines because of the high rate of tax he paid on that income in the Philippines. Therefore, Herrick did not file United States tax returns from 2000 through 2006.

When Herrick failed to file United States tax returns, the IRS prepared "substitute" tax returns for Herrick for the years 2000 through 2006. The IRS's substitute tax returns did not take into account the foreign taxes Herrick paid. The IRS determined that Herrick owed $1,330,162.66 in Unites States taxes. The IRS then levied that amount from Herrick's United States investment accounts to pay the amounts assessed due from the IRS-prepared substitute tax returns.

Herrick died on March 11, 2011. During the administration of his estate, Herrick's daughter, the administrator of his estate, learned of the tax issues and had U.S. income tax returns prepared and filed for the tax years 2000 through 2006. Unlike the IRS-prepared returns, these tax returns take into account Herrick's foreign taxes paid and apply the foreign earned income exclusion. Based on these returns, Plaintiff seeks a refund.

American taxpayers living and working overseas are, under certain circumstances, permitted to adjust their U.S. tax liabilities by excluding some of the foreign-earned income (26 U.S.C. § 911) and through the application of a credit for foreign taxes actually paid (26 U.S.C. § 901). The parties dispute whether Plaintiff is entitled to the benefit of the exclusion and/or credit.

## DISCUSSION

### Plaintiff's Motion for Summary Judgment

The parties agree that Plaintiff has satisfied the three jurisdictional requirements for seeking a tax refund: (1) full payment of the tax assessed; (2) timely filing of a refund claim with

the IRS; and (3) compliance with the statute of limitations for filing a refund suit.  After meeting these requirements, the taxpayer must then demonstrate that the IRS's assessment is incorrect and prove the correct amount of tax.  *United States v. General Dynamics*, 481 U.S. 239 (1987). In this case, the parties dispute whether Plaintiff has established the amount of refund, if any, is due because they disagree on whether Plaintiff is entitled to the foreign tax credit and the foreign earned income exclusion.

### 1. Foreign Tax Credit

First, Plaintiff argues that the IRS's assessments for the years 2000 through 2006 are not correct because they fail to account for the foreign tax credit.  Plaintiff asserts that Herrick was entitled to the credit because of his payment of income tax to the Philippines during those years. Plaintiff must establish the actual amount of taxes ultimately paid to the Bureau of Internal Revenue of the Philippines ("BIR") before this credit can be applied and accurately calculated.

The parties agree that Herrick lived, worked, and paid taxes in the Philippines.  Prior to the filing of this action, Plaintiff provided the IRS with Herrick's copies of the tax returns he filed in the Philippines.  During discovery in this case, Plaintiff obtained Herrick's employer's records relating to Herrick's tax filings from 2000 through 2006 and a certification from the BIR with respect to the taxes Herrick paid from 2001 through 2006.  The BIR did not provide a certification for the year 2000 because neither the BIR nor Herrick's employer could locate the specific form, Form 1604-CF, showing the transmittal of the tax payment.  However, Herrick and his employer both have record of his Philippines tax returns (Forms 1700 and 2316) for the year 2000.

Defendant argues that the tax returns from Herrick's records and his employer's records are not sufficient for the year 2000. In addition, Defendant contends that the information for the years 2001-2006 does not demonstrate whether subsequent adjustments were made that could have resulted in a reduced amount of those liabilities. Therefore, Defendant claims that the present record does not allow any party to calculate the correct amount of tax refund due, if any, to Plaintiff. In the alternative, Defendant asks the court to defer ruling on Plaintiff's motion until Defendant can obtain additional information from the BIR. Plaintiff unsuccessfully attempted to obtain complete account transcripts for each tax year from the BIR. After being informed of this fact, Defendant requested the information under a tax treaty between the United States and the Philippines. A response to that request was due December 15, 2015, but has not yet been received. Defendant requests the court to defer action on the motion under FRCP 56(d) until such information is received.

However, there is no evidence that the amount of taxes on the year 2000 returns is incorrect or that adjustments were later made to the taxes paid for 2001-2006, which have been certified by the Philippines BIR. Defendant is merely speculating that there may be additional information. Rule 56(b) requires more than speculation that there may be additional facts that could be found. Plaintiff explained, and Defendant did not disagree, that under the Philippines' tax law, adjustments and refunds are facilitated through employers rather than the Philippines BIR. Employers are required by the National Internal Revenue Code to deduct and withhold income tax from the compensation of their employees. If it is determined that the tax withheld from the employee's compensation has exceeded his or her tax due for the entire year, the employer is required to give the tax refund by a given date. Any information regarding

4

adjustments or refunds, therefore, would be in the possession of Herrick's employer, not the BIR, and there is no such evidence.  Therefore, the court concludes that, based on the evidence before the court, which the court finds sufficient, Plaintiff is entitled to apply the foreign tax credit to his 2000-2006 tax returns.

**2.  Foreign Earned Income Exclusion**

Second, Plaintiff contends that the IRS's assessments of Herrick's taxes are incorrect because it does not apply the foreign earned income exclusion.  *See* 26 U.S.C. § 911.  Herrick was eligible for the exclusion because he spent more than 330 days of each calendar year in a country other than the United States and qualified as a "bona fide resident" of the Philippines from 2000 through 2006.

However, Defendant contends that Plaintiff is not entitled to the foreign earned income exclusion, set out in 26 U.S.C. § 911, because that exclusion is only available if a taxpayer makes an election on a timely filed income tax return, an amendment to a timely filed return, or within one year after the due date of the return.  *Id.*; 26 C.F.R. § 1.911-7(a)(2).  In this case, it is undisputed that Herrick did not file timely returns.  In addition, the estate did not file returns until May 2, 2011, well beyond one year after the due date of the return for the last year at issue (2006).

Defendants argument, however, relies only on the first three subsections of Treasury Regulation § 1.911-7(a)(2)(i) and ignores the fourth subsection, Subsection (D).  Subsection (D) applies when the income tax return is filed after the periods described in subsections (A) through (C).  Subsection (D) allows a section 911 election to be made

5

(D) With an income tax return filed after the period described in paragraphs (a)(2)(I) (A), (B), or (C) of this section provided -

    (1) The taxpayer owes no federal income tax after taking into account the exclusion and files Form 1040 with Form 2555 or a comparable form attached either before or after the Internal Revenue Service discovers that the taxpayer failed to elect the exclusion; or

    (2) The taxpayer owes federal income tax after taking into account the exclusion and files Form 1040 with Form 2555 or a comparable form attached before the Internal Revenue Service discovers that the taxpayer failed to elect the exclusion.

Treasury Regulation § 1.911-7(a)(2)(i)(D) plainly allows a taxpayer to make the foreign earned income exclusion after the time periods cited by Defendant have expired in certain situations.  In addition, Plaintiff cites to IRS Chief Counsel Advice 200226010, issued March 20, 2002, referring to the Treasury Regulation, as support for its assertion that the foreign earned income exclusion can be filed at any time: "The intent of this [treasury] regulation is to allow a taxpayer whose only income at issue is excluded foreign earned income to file a late section 911 election."  Counsel Advise 20022610 further states that "the tax examiner should examine whether a taxpayer has a refund or a balance due.  If the taxpayer has a refund or no balance due, the taxpayer 'owes no federal income tax under Treas. Reg. §§ 1.911-7(a)(2)(D)(1) and (2) and does not need to request a private letter ruling from us."

Plaintiff asserts that Herrick owes no federal income tax under Treasury Regulation § 1.911-7(a)(2)(i)(D) because it is undisputed that all assessed tax payments have been paid prior to the filing of these refund claims.  Therefore, Plaintiff claims that its foreign earned income elections were validly filed under Subsection (D) even though they were filed after the periods set forth in Treasury Regulation § 1.911-7(a)(2)(i)(A), (B), or (C).

In analyzing whether Plaintiff fits within Treasury Regulation § 1.911-7(a)(2)(i)(D), the court notes that there are two prongs to Subsection (D).  Under the first prong of subsection (D), if Herrick owes no federal income tax after taking into account the exclusion, he can file late and take advantage of the exclusion whether or not the IRS has discovered his failure to elect the exclusion.  Plaintiff claims that the first prong of subsection (D) applies because the IRS already has Herrick's money and it does not owe the IRS.  This analysis, however, ignores that Herrick had income in addition to his foreign earned income.  Herrick had interest and dividend interest in addition to his foreign earned income and Plaintiff admits that Herrick would have had about $73,000 in tax liability for 2000-2006 even with the exclusion applied.  Therefore, although there is no tax owing, the first prong of Subsection (D) does not appear to apply to this case.

The second prong of Subsection (D), however, applies if there is still some tax liability owing but the IRS has not discovered that Herrick failed to elect the exclusion.  Because Herrick has some tax liability for interest and dividend income in addition to his foreign earned income, the second prong applies if Plaintiff made the election before the IRS discovered Herrick's failure to elect the exclusion.  In this case, the IRS discovered that Herrick failed to file tax returns from 2000-2006, but that does not necessarily mean that the IRS discovered Herrick's failure to elect the exclusion.  The IRS did not apply the foreign earned income exclusion when it filed the substitute tax returns for Herrick.  Therefore, there is no evidence that the IRS discovered that Herrick failed to elect the exclusion.  Plaintiff notified the IRS that the exclusion applied when it filed Herrick's tax returns.  Therefore, the court concludes that Plaintiff timely made a § 911 election of the foreign earned income exclusion under the second prong of

Subsection (D) and the foreign earned income exclusion applies to Herrick's 2000-2006 tax returns.

### 3. Refund Amount

Based on the above analysis, the court concludes that the facts necessary for determining the proper refund are before the court. Plaintiff is entitled to a refund when the foreign tax credit and the foreign earned income exclusion are correctly applied to Herrick's 2000-2006 tax returns. In addition, when a taxpayer overpays tax and is not paid the overpayment until after the due date of the return, 26 U.S.C. § 6611 interest accrues on the balance of the overpayment and is also payable to the taxpayer. Plaintiff's counsel has provided the court with detailed calculations, including the refund amount and interest due to Plaintiff and the tax, penalties, and interest due to the IRS. The court has reviewed these calculations and supporting documentation and concludes that such calculations are correct. Plaintiff calculates that it is entitled to a refund plus interest, less tax, penalties, and interest due the IRS, in the amount of $1,197,979.15. The court concludes that Plaintiff has properly met its burden of establishing the correct amount of refund and Plaintiff is entitled to summary judgment in its favor in the amount of  $1,197,979.15.

## CONCLUSION

Based on the above reasoning, Plaintiff's Motion for Summary Judgment [Docket No. 24] is GRANTED. Plaintiff is entitled to judgment against Defendant in the amount of $1,197,979.15. The Clerk of Court is directed to enter Judgment in Plaintiff's favor and close the case, each party to bear its own fees and costs.

8

Dated this 25th day of March, 2016.

BY THE COURT:

Dale A. Kimball,
United States District Judge